Thomas Wyman **BADGETT**, Appellant,

v.

The **STATE** of Texas.

No. 119–00.

Court of Criminal Appeals of Texas, En Banc.

April 11, 2001.

Herb H. Ritchie, Houston, for appellant.

Dan McCrory, Asst. DA, Houston, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

JOHNSON, J., delivered the opinion of the Court, in which MEYERS, PRICE, HOLLAND, and HOLCOMB, JJ., joined.

Following his involvement in an automobile collision, appellant Thomas Wyman Badgett was arrested for suspicion of DWI. He refused to give a blood sample voluntarily, so one was taken at a hospital, allegedly pursuant to § 724.012(b) of the Texas Transportation Code, over his objection. Appellant filed a motion to suppress the blood sample, which the trial court denied. Appellant then entered a negotiated plea of "no contest" and appealed the denial of his motion to suppress. The court of appeals affirmed the trial court's judgment. *Badgett v. State*, 7 S.W.3d 645 (Tex.App.—Houston [14th Dist.] 1999). We granted appellant's petition for discretionary review to determine whether "[t]he court of appeals erred in holding that § 724.12(b)(2) and § 724.013 of the Texas Transportation Code did not require law enforcement personnel to possess specific evidence that an intoxicated defendant was at fault in causing an accident before a blood specimen can be taken involuntarily, but that merely an accident involving an intoxicated driver is sufficient." We reverse and remand.

## FACTS

Appellant was involved in an automobile collision in May of 1997. He was standing beside his vehicle when Officer Kerr arrived on the scene of the accident. Sergeant Traylor, the officer working the accident that night, handed Kerr appellant's license and told Kerr that appellant was one of the drivers in the accident, that he might be intoxicated, and that Kerr might want to perform a field sobriety test. After performing several field sobriety tests, Kerr believed that appellant might be intoxicated and placed him under arrest. Kerr testified that based on his experience, he also believed at the time of appellant's arrest that appellant could have been at fault for the accident because appellant was intoxicated. At the time Kerr left the scene with appellant, the accident reconstruction team had not yet determined that appellant was not at fault.

Appellant was taken to the Baytown Police Station, where he declined to give a blood sample. Kerr then took appellant to a local hospital, where a sample of appellant's blood was drawn over his objection.

After appellant was charged with DWI, he filed a motion to suppress the results of his blood test. The motion asserted that Kerr did not witness the accident, and therefore, could not have reasonably believed that the collision was caused by appellant's alleged offense of DWI. Appellant argued that, therefore, the provisions of § 724.012(b)(2) of the Texas Transportation Code had been violated, and that this violation required the suppression his blood sample. The trial court denied the motion to suppress, and appellant entered a negotiated no-contest plea.

## COURT OF APPEALS

On appeal, appellant argued, *inter alia,* that Officer Kerr had neither appellant's permission to take the blood sample nor any basis to reasonably believe that the

accident occurred as a result of appellant driving while intoxicated.

Section 724.012(b) provides that:

"[a] peace officer shall require the taking of a specimen of the person's breath or blood if:

(1) the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft;

(2) the person was the operator of a motor vehicle or a watercraft involved in an accident that the officer reasonably believes occurred *as a result of the offense;*

(3) at the time of the arrest the officer reasonably believes that a person has died or will die as a direct result of the accident; and

(4) the person refuses the officer's request to submit to the taking of a specimen voluntarily."

(Emphasis added.)

Section 724.013 provides that: "[e]xcept as provided by Section 724.012(b), a specimen may not be taken if a person refuses to submit to the taking of a specimen designated by a peace officer."

The court of appeals held that the results of Kerr's field sobriety tests provided a reasonable belief that appellant had committed the offense of operating the vehicle while intoxicated. *Badgett,* 7 S.W.3d at 648–49. It then focused on whether the mere fact that appellant had been involved in an accident while driving while intoxicated was sufficient to establish a reasonable belief that the accident occurred as a result of the offense, or whether § 724.012(b)(2) further required a showing that facts were known at the time of taking appellant's blood specimen that affirmatively indicated appellant was at fault in causing the accident. *Id.* at 649.

It noted that under certain circumstances, completion of an accident investigation and identification of the likely causative factors of the accident may not be possible in a time frame in which a defendant may reasonably be detained or a meaningful specimen be taken from him. *Id.* It also reasoned that because intoxication is widely known to impair a driver's ability to drive safely, the fact that an accident occurred in which a driver was intoxicated supports a reasonable inference that the intoxicated condition of the driver contributed to the accident. *Id.* Therefore, it held that § 724.012(b)(2) could not reasonably be interpreted to impose an obligation on law enforcement personnel to possess specific evidence that an intoxicated defendant was at fault in causing the accident before a specimen may be taken involuntarily; instead, it authorized a specimen to be taken when an accident has occurred in which an intoxicated driver was involved. *Id.*

### ANALYSIS

When interpreting a statute, we look to the literal text of the statute for its meaning, and we ordinarily give effect to that plain meaning, unless application of the statute's plain language would lead to absurd consequences that the Legislature could not possibly have intended, or if the plain language is ambiguous. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App. 1991).

In order for the involuntary taking of a blood specimen to be authorized, § 724.012(b), by its plain language, sets out three specific requirements: (1) there was a life-threatening accident; (2) the defendant was arrested for an intoxication offense under Chapter 49; and (3) the arresting officer "reasonably believed[d]" that the accident occurred *as a result of the offense.* The court of appeals held that

"because intoxication is widely known to impair a driver's ability to drive safely, the fact that an accident has occurred in which a driver was intoxicated supports a reasonable inference that the intoxicated condition of the driver contributed to the accident." *Id.* at 649. Under this rationale, the first two factors, in and of themselves, automatically establish the third factor that the officer "reasonably believe" that the accident occurred *as a result of the offense.* This reasoning effectively nullifies the third factor. That is, by allowing the officer's reasonable belief to flow automatically from the other requirements of the statute, the court of appeals' rationale effectively voids the requirement that the officer "reasonably believe" that the accident occurred *as a result of the offense,* as it will always be established by the other two factors. This is contrary to one of the cardinal rules of statutory construction: statutes are to be construed, if at all possible, so as to give effect to all of its parts, and so that no part is to be construed as void or redundant. *See* 2A SUTHERLAND STAT. CONST. § 46:06 (6th ed.2000), and cases cited therein; 73 AM.JUR.2D *Statutes* § 250 (1974 & Supp.2000), and cases cited therein; 67 TEX. JUR.3D *Statutes* § 124 (1989), and cases cited therein; *see also* TEX. GOV'T.CODE § 311.021(2) ("In enacting a statute, it is presumed that … the entire statute is intended to be effective").

By making the "reasonable belief" requirement separate from the requirements that there be a life-threatening accident and that there be an arrest for an intoxication offense, the plain language of the statute indicates that the officer's "reason-able belief" that the accident occurred as the result of the offense must be based on something more than the mere fact of the accident and the officer's arrest of the defendant for an intoxication offense. Therefore, we hold that such a belief must be based upon specific and articulable facts of causation. *Cf. Minnesota v. Dickerson,* 508 U.S. 366, 374, 113 S.Ct. 2130, 2136, 124 L.Ed.2d 334 (1993) ("reasonable suspicion" based upon "specific and articulable facts") (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)); *U.S. v. Hensley,* 469 U.S. 221, 226–9, 105 S.Ct. 675, 679–80, 83 L.Ed.2d 604 (1985) (same) (citing *Terry, supra,* and *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). Articulable belief can result from any number of factors, including but not limited to, witness interviews, conclusions drawn from experience in combination with observation of the accident scene,[1] or determinations made by an accident reconstruction team. Requiring this standard of belief gives effect to all parts of the statute and does not overburden the police; the above factors constitute a basic part of everyday investigative techniques used by law enforcement.

We recognize the time strictures on obtaining a reliable measurement of blood-alcohol level and believe, based on other legislation dealing with intoxicated drivers, that the legislature also recognizes them. The legislature could have chosen to authorize the involuntary drawing of blood if there has been a life-threatening accident and one or more of the drivers is arrested on suspicion of driving while intoxicated. Instead, it chose to require, in addition, a

---

**1.** For example, if the officer observes that the intoxicated driver was rear-ended at a stoplight, experience would indicate that the accident was not caused by the intoxicated driver. However, if the scene indicates that the intoxicated driver's car pulled into an intersection from a side street, which had a stop sign, onto a major street, which did not, and struck the other vehicle broadside, experience would produce a reasonable belief that the accident was caused by the intoxicated driver. Other scenarios will be less clear-cut, but will still permit articulable conclusions based on experience as to the cause of the collision.

reasonable belief that the accident occurred *as a result of* the suspected intoxication offense. We are not free to negate the statute's plain language because of our concern over time limits.[2]

Finally, we note that our interpretation of § 724.0129(b) does not lead to an absurd result that the legislature could not possibly have intended. There is nothing absurd in requiring more than the bare occurrence of an accident and an intoxication-offense arrest before the state is allowed to make an seizure as intrusive as the involuntary drawing of blood.

Appellant's ground for review is sustained. The judgment of the court of appeals is reversed, and the cause is remanded to that court for proceedings consistent with this opinion.

MEYERS, J., filed this concurring opinion.

I join the opinion of the Court. I write to point out that the Court of Appeals' holding writes into the controlling statute a presumption that, once established, places a burden on the defendant to overcome it, in contravention of the plain language.

The Transportation Code provides that a police officer shall require the taking of a blood specimen if, among other requirements, "(1) the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft; and (2) the person was the operator of a motor vehicle or a watercraft involved in an accident that the officer reasonably believes occurred as a result of the offense." TEX. TRANSP. CODE § 724.12(b). Thus, the State must show these requirements have been met in order to justify an involuntary taking of a blood specimen.[1]

The Court of Appeals held that section 724.012(b)(2) could not "reasonably be interpreted to impose an obligation on law enforcement personnel to possess specific evidence that an intoxicated defendant was at fault in causing the accident before a specimen may be taken involuntarily, but only that an accident has occurred in which an intoxicated driver was involved." *Badgett v. State,* 7 S.W.3d 645, 648 (Tex. App.—Houston [14th Dist.] 1999). Under the Court of Appeals' holding, the State need only show that the driver was intoxicated in order to meet the additional statutory requirement that the officer have a reasonable belief that the driver's intoxication was the cause of the accident. The State's burden is met on the causation element once intoxication is shown; it need not show more. Presumably, a defendant could overcome the State's case by showing that he did not cause the accident. But the burden would be on the defendant because the State has already shown all it needs to in order to establish a valid

---

**2.** We also note the problematic standard set out in § 724.012(b)(3), which provides that "at the time of the arrest the officer reasonably believes that a person has died or *will die* as a direct result of the accident." (Emphasis added.) The latter requirement seems rather unworkable, since reasonable belief that a person *will die* is speculative at best, even for those with medical training. A more workable standard might be a reasonable belief that a person *may die*. In any case, the issue of this standard is not before us today and, in any event, is a subject best left to the legislature.

**1.** The defendant bears the initial burden on his motion to suppress evidence to establish the basis for his Fourth Amendment claim. *State v. Mercado,* 972 S.W.2d 75 (Tex.Crim. App.1998). Once this basis has been established, the burden shifts to the prosecution to show the validity of the search under an applicable theory of law. In this case, the State is relying on section 724.12(b) to show the validity of the search.

search. *See n. 1,* supra. It would appear to work like this: once the State has shown that the driver was intoxicated, a presumption arises that the accident was caused by the intoxication. The defendant then has the burden of overcoming the presumption by proving that the intoxication did not cause the accident and that the officer had conclusive evidence of this fact. Placement of the burden on the defendant to prove a negative is contrary to the plain language of the statute. Nothing in the language of the provision contemplates the application of a presumption. The Court of Appeals erred in holding otherwise.

With these comments, I join the opinion of the majority.

KEASLER, J., filed a dissenting opinion, in which KELLER, P.J., WOMACK, J., and HERVEY, J., joined.

I agree that the Court of Appeals' interpretation of § 724.012(b)(2) of the Texas Transportation Code contravenes plain language of the statute. But the majority's analysis also contradicts the statute's plain language and leads to absurd results. Under the majority's rationale, in cases where no causation evidence exists other than evidence of intoxication, officers may not form a reasonable belief that the intoxicated driver caused the accident. This is silly. It ignores common knowledge and defies common sense.

Section 724.012(b) states that "[a] peace officer shall require the taking of a specimen of the person's breath or blood if:

(1) the officer arrests the person for an offense under Chapter 49, Penal Code,

involving the operation of a motor vehicle or a watercraft;

(2) the person was the operator of a motor vehicle or a watercraft involved in an accident that the officer reasonably believes occurred as a result of the offense;

(3) at the time of the arrest the officer reasonably believes that a person has died or will die as a direct result of the accident; and

(4) the person refuses the officer's request to submit to the taking of a specimen voluntarily." [1]

In looking at subsection (2), the Court of Appeals stated that law enforcement need not possess specific evidence that an intoxicated defendant was at fault in the accident. The officers only need evidence that an accident has occurred involving an intoxicated driver.[2] The majority disagrees, holding that intoxication alone is always insufficient, as a matter of law, to establish that the offense caused the accident. Instead, the majority asserts that the officer must have additional sufficient, articulable facts apart from evidence of intoxication.[3] I disagree with both the Court of Appeals and the majority opinion.

### Plain language

When we interpret a statute it is our duty to consider the literal text of the entire statute.[4] We are governed by this "plain language" approach unless the language is ambiguous or the result would lead to absurd consequences that the legislature could not possibly have intended.[5] In that case we may consider extra-textual factors, such as legislative history or the

---

1. Tex. Transp. Code Ann. § 724.012(b) (Vernon 1999).

2. *Badgett,* 7 S.W.3d at 649.

3. *Ante,* at 138–139.

4. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex. Crim.App.1991).

5. *Id.*

probable consequences of a particular interpretation.[6]

The majority holds that the Court of Appeals' opinion violates the statute's plain language because its reasoning nullifies the requirements of § 724.012(b)(2).[7] I agree. According to the Court of Appeals, the officer would only need to reasonably believe that the driver was intoxicated, without any evidence of causation. This would give *carte blanche* to officers to demand blood samples from intoxicated drivers.

But the majority also holds that the plain language of the statute dictates that the officer's "reasonable belief" that the accident occurred must be based on something more than intoxication. In reaching this conclusion, the majority looks at the construction of the statute. But there is no indication that the statute requires as a matter of law that there be evidence in addition to intoxication to establish causation. Instead, the plain language of this section simply indicates that the officer must reasonably believe the accident was a result of (caused by) the offense (driving while intoxicated).

### Absurd results

I believe that there are three categories of cases that fall under § 724.012(b)(2). The first category consists of cases in which the officer has sufficient articulable facts apart from the suspect's intoxication to form a reasonable belief that the suspect caused the accident. In these cases blood can be taken without the suspect's permission provided that the remaining sub-sections of § 724.012(b) are met. The second category of cases are at the opposite end of the spectrum—cases in which the officer has specific evidence that the defendant did not cause the accident. In these cases, even if the other elements of § 724.012(b) were met, the officer would not be permitted to demand a blood sample because he could not form a reasonable belief that the suspect caused the accident due to intoxication or any other reason. Under the Court of Appeals' holding, the officer would be able to take a blood sample without the suspect's permission simply because the accident involved an intoxicated driver. But that holding completely ignores the statute's causation requirement.

The third category contains cases that lie somewhere in the middle—cases in which the officer has no evidence of causation, one way or the other, apart from the evidence of the suspect's intoxication. In these cases, the officer's sole reason for believing that the suspect caused the accident would be because the suspect was intoxicated. I find that in these cases it can be reasonable for the officer to believe that an accident occurred because the suspect was intoxicated and for that reason alone.

Officers should attempt to discern who or what caused the accident. An officer could form a reasonable belief as to causation based on a variety of factors, such as the officer's experience, the position of the vehicles, accident reconstruction findings, or statements from the drivers, emergency personnel, or witnesses. But there will be cases in which the complexity of the accident, the need to tend to fatal injuries, the number of emergency personnel on the scene, the difficulty of investigating, the physical condition of those involved, or conflicting witness statements will prevent an officer from forming a reasonable belief as to causation independent of intoxication within a time frame that he can extract a

6. *Id.*

7. *Ante,* at 138–139.

meaningful blood sample.[8] Indeed, there may be accidents where the cause is never known. In these cases it is reasonable for an officer to determine that the accident was caused by the suspect's intoxication.

But under the majority's rationale, an officer would be stripped of his ability to use reason and common sense in the case in which there is simply no additional information available as to causation. For example, an officer could arrive at the scene of a two-car accident. One driver is dead. He does not smell of alcohol. The other driver is not injured, but smells of alcohol, has slurred speech, and cannot stand up. There are no other witnesses. The cars have apparently collided head-on, spun around, are now in a ditch, and it is unclear who was at fault. In cases like this, I believe an officer could form a reasonable belief, based on his experience and the evidence of intoxication, that the accident occurred as a result of the intoxicated driver. Nothing in the statute prohibits this.

It is ridiculous to say that an officer cannot reasonably believe that the driver who cannot walk, talk, or even stand up, caused the accident. But that is exactly what the majority says. It holds that in cases like this, as a matter of law, the officer is not able to form a reasonable belief that the intoxicated driver caused the accident. The officer would be forbidden from taking the intoxicated driver's blood sample. And consequently, the State would be prevented from obtaining critical evidence against that driver. The majority opinion is unreasonably restrictive and leads to absurd results.

The key phrase is "reasonable belief," and that must be determined on a case-by-case basis. According to the majority, as a matter of law, conclusive evidence of intoxication could never be the basis of an officer's reasonable belief about causation. But it is not the job of an appellate court to decide as a matter of law that certain facts can or cannot ever be reasonable. Trial judges must look at all of the facts and circumstances known to the officer at the time of arrest to determine if the officer had a reasonable belief as to causation.

I respectfully dissent.

---

8. See *Badgett,* 7 S.W.3d at 649.