Opinion issued March 1, 2012.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00399-CR

———————————

Shaun Leon Lewis, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 182nd District Court

Harris County, Texas



Trial Court Case No. 1234240

 



 

MEMORANDUM OPINION

          A
jury convicted Shaun Leon Lewis of possession of cocaine, and the trial court
assessed punishment at ten years’ confinement.[1] Lewis raises three issues
on appeal, complaining that the evidence is legally insufficient to support his
conviction and that the trial court erred in denying his motion to suppress
evidence obtained pursuant to a defective search warrant. 

          We
affirm. 

Background

          Officer
D. Garza is a twenty-eight year veteran of the Houston Police Department and a
former member of its narcotics team. In the probable cause affidavit executed
in this case, Garza averred that he received anonymous reports of drugs being
sold from a house at 138 De Haven, Houston, Texas. Because the house was in an
area from which HPD received numerous narcotics complaints, narcotics officers
began surveillance of the house. On September 22, 2009, they arranged a
“controlled buy” using a confidential informant familiar with the sight and
smell of crack cocaine. The occupants of the De Haven house refused to sell to
the confidential informant during the “controlled buy,” but the confidential
informant observed what he or she knew to be crack cocaine inside the house. The
two men with whom the confidential informant spoke also confirmed to the
confidential informant that the substance was crack cocaine. Believing the
information gathered during the “controlled buy” to be credible and reliable,
Garza obtained a search warrant for the De Haven house on September 23, 2009. 

The search warrant was executed the
next day. During the guilt-innocence phase of trial, Garza explained that, as
he approached the front door of the De Haven house with other narcotics officers,
he observed people inside through open blinds on one window. The narcotics officers
knocked on the door and announced their presence as law enforcement. They
immediately heard the sounds of people “running around and just scrambling”
inside the house. Concerned that the occupants of the house might be “running
to weapons, running to try to get away, or running to destroy any evidence,”
the officers used a battering ram to force entry into the house. 

As he rushed into the house, Garza
observed Lewis and another man, Leejay Stoneham, run from the living room area
towards the kitchen. Lewis and Stoneham were apprehended just before they
reached the kitchen. A third man, Ricky Raven, was apprehended in the living
room. During their search of the De Haven house, narcotics officers discovered
a razor blade and eleven grams of crack cocaine, with an estimated street value
of $2,000, on the kitchen counter near the sink. A plastic baggy of the type
commonly used to package crack cocaine for sale was also located at the scene,
and marijuana, a marijuana grinder, and a lighter were discovered on a coffee
table in the living room. Garza noted the odor of marijuana in the house. The sparse
furnishings caused him to believe, based on his experience, that the house was
likely being used as a “crack house,” meaning “[b]usiness is done there at
whatever hours. Once it was closed, they left and went home to their residence
where they sleep at.” In the master bedroom at the back of the house, officers
discovered some men’s clothing and invoices in Lewis’s name, including a
CenterPoint Energy bill for the De Haven house, a Comcast cable television work
order for the house, and an automotive repair invoice for a Chevy Impala
officers frequently had observed parked outside of the house during
surveillance and on the day the search warrant was executed. 

A grand jury indicted Lewis for the
offense of possession with intent to deliver a controlled substance, namely
cocaine, in an amount between four and 200 grams. Before trial, Lewis moved to
suppress all evidence obtained during the search of the De Haven house,
alleging that the search warrant was deficient. At the hearing on the motion to
suppress, Lewis testified that the De Haven house was not his home or permanent
residence; he was only staying there with a cousin on a part-time basis. He
paid a few of the bills only to help out his uncle, who also resided at the
house. The trial court denied Lewis’s motion to suppress, and the case
proceeded to trial. This appeal followed the jury’s finding of guilt of the
lesser-included offense of simple possession and the trial court’s entry of a
judgment of conviction in accordance with the jury’s finding.

Sufficiency of the Evidence

          Lewis’s
first and third issues challenge the legal sufficiency of the evidence to
support his conviction. In his first issue, Lewis contends that his mere
presence in the De Haven house when cocaine was found is not sufficient to
establish that he had “actual care, custody, control, or management” of the
narcotic. In his third issue, Lewis contends there is insufficient evidence
affirmatively linking him to the cocaine found in the De Haven house. Because
these issues are closely related, we consider them together. 

I.       Standard of Review

We review legal sufficiency of the evidence by considering
all of the evidence in the light most favorable to the verdict to determine
whether any rational fact-finder could have found the essential elements of the
offense beyond a reasonable doubt. See
Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Laster v. State, 275 S.W.3d 512, 517
(Tex. Crim. App. 2009); Ervin v. State,
331 S.W.3d 49, 54-55 (Tex. App.—Houston [1st Dist.]
2010, pet. ref’d). Evidence is legally insufficient when the “only proper
verdict” is acquittal. Tibbs v. Florida,
457 U.S. 31, 41-42, 102 S. Ct. 2211, 2218 (1982). We
give deference to the responsibility of the fact-finder to fairly resolve
conflicts in testimony, to weigh evidence, and to draw reasonable inferences
from the facts. Williams v. State,
235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

II.      Possession of a Controlled Substance

          “[A] person commits an
offense if the person knowingly or intentionally possesses a controlled
substance listed in Penalty Group 1, unless the person obtained the substance
directly from or under a valid prescription or order of a practitioner acting
in the course of professional practice.” Tex.
Health & Safety Code Ann. § 481.115(a) (West 2010). Cocaine is a
controlled substance listed in Penalty Group 1. Id. § 481.102(3)(D) (West 2010). Because the amount of cocaine here
was four or more grams and less than 200 grams, the offense is a second-degree
felony. Id. § 481.115(d). 

To obtain Lewis’s conviction for unlawful
possession of cocaine, the State was required to prove that he: (1) exercised
control, management, or care over the substance; and (2) knew the substance
possessed was contraband. Poindexter,
153 S.W.3d 402, 405 (Tex. Crim. App. 2005); see
also Tex. Health & Safety Code
Ann. § 481.002(38) (West 2010) (defining possession); Tex. Penal Code Ann. § 1.07(a)(39)
(West 2011) (same). Regardless of
whether the State’s evidence was direct or circumstantial, it must establish
that Lewis’s connection with the cocaine was more than fortuitous. Poindexter, 153 S.W.3d at 405 (citing Brown v. State, 911 S.W.2d 744, 747
(Tex. Crim. App. 1995)). This is the
so-called “affirmative links” rule that protects the innocent bystander from
conviction merely because of his fortuitous proximity to someone else’s drugs. Poindexter, 153 S.W.3d at 405-06 (“This
rule simply restates the common-sense notion that a person—such as a father, son, spouse, roommate, or
friend—may jointly possess property
like a house but not necessarily jointly possess the contraband found in that house.”). “Mere presence at the location where
drugs are found is thus insufficient, by itself, to establish actual care,
custody, or control of those drugs.” Evans
v. State, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006); Poindexter, 153 S.W.3d at 406. Presence or proximity, when combined
with other direct or circumstantial evidence (e.g., “links”), however, may well
be sufficient to establish that element beyond a reasonable doubt. Evans, 202 S.W.3d at 162; Olivarez v. State, 171 S.W.3d 283, 291
(Tex. App.—Houston [14th Dist.] 2005, no pet.) (“An affirmative link generates
a reasonable inference that the accused knew of the contraband’s existence and
exercised control over it.”). 

Some relevant factors that may
affirmatively link Lewis to the cocaine include: (1) his presence when the
search was conducted, (2) whether the substance was in plain view, (3) his
proximity to and the accessibility of the substance, (4) whether he was under
the influence of narcotics when arrested, (5) whether he possessed other contraband
or narcotics when arrested, (6) whether he made incriminating statements when
arrested, (7) whether he attempted to flee, (8) whether he made furtive
gestures, (9) whether there was an odor of contraband, (10) whether other
contraband or drug paraphernalia were present, (11) whether he owned or had the
right to possess the place where the drugs were found, (12) whether the place
where the drugs were found was enclosed, (13) whether he was found with a large
amount of cash, and (14) whether his conduct indicated a consciousness of
guilt. Evans, 202 S.W.3d at 162 n.12
(citing Olivarez, 171 S.W.3d at 291). It is not the number of links that is
dispositive, but rather the logical force of all the evidence. Evans, 202 S.W.3d at 162; Gilbert v. State, 874 S.W.2d 290, 298
(Tex. App.—Houston [1st Dist.] 1994, writ ref’d). 

          In
this case, Lewis was present at the De Haven house when the search was
conducted. When the narcotics officers announced their presence and entered the
house, Lewis attempted to flee towards the kitchen. This is evidence of two links: “presence” and
“flight.” The direction of Lewis’s flight further links him to the cocaine
because, there, in plain view and easily accessible near the sink, narcotics
officers found a razor blade and crack cocaine. Garza testified that, kept near
the sink, the cocaine would be easy for Lewis and the others to dispose of down
the drain. This is evidence of three additional links, including drugs in
“plain view” and “easily accessible” and a “consciousness of guilt.” Other
contraband was also discovered in plain view in the De Haven house, a sixth
link, including marijuana, a marijuana grinder, a lighter, and plastic baggies
commonly used to package crack cocaine for sale. The marijuana, marijuana
grinder, and lighter sat on a coffee table along with vehicle and house keys. None
of the contraband or paraphernalia was cached away somewhere in the house
beyond Lewis’s view or access. According to Garza, the De Haven house, an
enclosed space, also smelled of marijuana—a seventh link. With respect to ownership or a right to possess the De
Haven house, an eighth link, the State introduced evidence of Lewis’s personal
effects found in the master bedroom and utilities and cable television orders
in Lewis’s name. Garza also observed a Chevy Impala tied to appellant parked
outside the De Haven house prior to and during the time the search warrant was
executed. 

We conclude that sum total of this
evidence is legally sufficient to support a rational jury’s finding that Lewis had
actual care, custody, control or management of the cocaine in the De Haven
house. The logical force of the evidence in this case, coupled with reasonable
inferences from it, is legally sufficient to establish, beyond a reasonable
doubt, each element of the charged offense of possession of cocaine. We
therefore overrule Lewis’s first and third issues.

Motion to Suppress

In his second issue, Lewis challenges
the trial court’s denial of his pretrial motion to suppress evidence obtained pursuant
to an allegedly defective search warrant for the De Haven house. Specifically,
Lewis complains that the search warrant was defective because (1) the facts
stated in Officer Garza’s affidavit were too stale to establish probable cause
and (2) there is no evidence that Lewis was the party suspected in the
affidavit of having control of the house, identified by the confidential
informant as “Marlo.” Because these particular complaints do not comport with
the complaints Lewis made at trial, we do not reach his second issue. See Pena v. State, 285 S.W.3d 459, 464
(Tex. Crim. App. 2009). 

Rule of Appellate Procedure 33.1 requires,
as a prerequisite to presenting a complaint for appellate review, a “timely
request, objection, or motion” stating “the grounds for the ruling that [Lewis]
sought from the trial court with sufficient specificity to make the trial court
aware of the complaint, unless the specific grounds were apparent from the
context.” Tex. R. App. P.
33.1(a)(1)(A). Lewis therefore bore the responsibility of clearly conveying to
the trial court his particular complaints about the search warrant, “including the
precise and proper application of the law as well as the underlying rationale.”
Pena, 285 S.W.3d at 463-64 (“To
avoid forfeiting a complaint on appeal, the party must ‘let the trial judge
know what he wants, why he thinks he is entitled to it, and to do so clearly
enough for the judge to understand him at a time when the judge is in the
proper position to do something about it.’”) (quoting Lankston v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). Preservation
of error also depends on whether the complaint made on appeal comports with the
complaint made at trial. Pena, 285
S.W.3d at 463. 

Before trial, Lewis moved to
suppress evidence obtained pursuant to the search warrant because the affidavit
in support of the search warrant did not “establish probable cause within the
Four Corners of the warrant” and contained “false statements and material
misrepresentations.” Lewis narrowed his complaints during the hearing on the
motion to suppress. He argued that the search warrant was defective for two reasons:
(1) Officer Garza did not state the amount of narcotics observed by the
confidential informant in the supporting affidavit and (2) whereas Officer
Garza stated his belief that the “suspected party” committed the offense of
possession of a controlled substance, namely crack cocaine, the search warrant
commanded the arrest of the “suspected party” for delivery of crack cocaine. At
no point, however, did Lewis complain to the trial court that the facts stated
by Officer Garza were stale or that the warrant did not authorize his arrest,
as he does now on appeal. Consequently, error, if any, has not been preserved
for our review. 

Conclusion

          Having
determined that Lewis’s conviction is supported by sufficient evidence and that
Lewis has not preserved error, if any, with respect to the denial of his motion
to suppress, we affirm the judgment of the trial court.

 

 

 

 

 

 

 

                                                                   Harvey
Brown

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Higley and Brown.

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]           See
Tex. Health & Safety Code Ann.
§ 481.115(a), (d) (West 2010).